**44 So.2d 311**

**BANK OF BATON ROUGE v. HART ESTATE, Inc.**

No. 39592.

Jan. 9, 1950.

Brumfield, Hebert & Rush, Baton Rouge, for opponent-appellant.

Odom & Belanger, Baton Rouge, for State Bank Commissioner.

Borron, Owen, Borron & Delahaye, G. T. Owen, Jr., Baton Rouge, for Stockholders' Committee.

LeBLANC, Justice.

On February 19, 1932, Robert A. Hart, now deceased, purchased from the Bank of Baton Rouge, fifty (50) certificates of deposit in the amount of One Thousand ($1000.00) Dollars each. These certificates were all in printed form and were signed by W. T. Palfrey, Cashier. They were all made payable six months after date, "only on return of the certificate" and on each there appears an added stipulation in typewritten form that they each bear four (4%) per cent interest from date and that accrued interest was to be allowed if the amount of the principal was left on deposit four months.

On February 18, 1933, or exactly one year from the date of each certificate, the Bank issued to R. A. Hart, and he evidently accepted, two additional certificates of like tenor and import, each in the sum of One Thousand ($1000.00) Dollars, the only difference being that accrued interest was to be allowed from date until payment. It may here be stated that the last two certificates were issued and accepted in payment of the interest due for one year on the original fifty certificates.

On July 24, 1933, following the general bank crisis throughout the country, the Bank of Baton Rouge went into liquidation and all of its business and affairs were taken over and administered by State Bank Commissioner, all in accordance with the laws of this State, and more particularly, Act 300 of 1910.

In the course of liquidation various payments referred to as liquidating payments and liquidating dividends were made over a period beginning February 16, 1938 and ending July 14, 1947, and the face value of the certificates mentioned was paid in full and payments were acknowledged and receipted by the holder. None of the interest due on any of them, however, was paid.

The liquidating payments and the liquidating dividends were all paid in accordance with provisional accounts and tableaux of distribution, filed at the time in the liquidation proceedings in Court, after due advertisement and upon homologation and approval of same by judgment of the Court. No opposition was filed by any one to any of these accounts nor was an appeal taken from any of the judgments of homologation.

On November 16, 1948, the State Bank Commissioner filed his final account in court to which Hart Estate, Inc., the present owner of the certificates of deposit, filed an opposition demanding interest in the sum of Eight Thousand and Five Hundred, Forty-six ($8546.92) and 92/100 Dollars.

This opposition was met with an exception of no cause or right of action and a plea of res adjudicata filed on behalf of the State Bank Commissioner. The day following the filing of these pleas, certain parties styling themselves the "Stockholders Committee" and allegedly representing the stockholders of the Bank, intervened to contest the opposition filed by Hart Estate, Inc., and joined the State Bank Commissioner in his exception of no cause or right of action and plea of res adjudicata.

These pleas were tried and submitted to the district Court on an agreed stipulation of fact. They were both sustained by the district judge, who then entered judgment rejecting the demand made by the opponent and dismissing the opposition at its cost. The appeal is from a judgment so decreeing.

The resume of the pleadings and the statement of facts so far made reveal that we are confronted with issues which are similar in almost every respect to those which appeared before this Court in the the case of Liquidation of Canal Bank & Trust Co., 211 La. 803, 30 So.2d 841, 851. The question presented relates to the right of a depositor of money in a state bank to claim interest on his deposited funds during the liquidation of the bank by the State Bank Commissioner. The matter was thoroughly discussed in the opinion in the Canal Bank case, cited, in which it was clearly held that such depositor was not entitled to interest on that part of his claim

which had been paid under a tableau of distribution that had been approved and homologated by a judgment of Court, all in accordance with the provisions of law relating to such matters. Pointing out the procedure that has to be followed, the opinion states as follows: "In the performance of his duty in distributing the available cash assets of the bank to its creditors, the bank commissioner must, as in judicial liquidations, obtain a judgment of court homologating the account and this judgment is only obtained after the commissioner has filed a tableau of distribution with the clerk of court and it has been duly advertised so that all persons having an interest therein may oppose it. It is only in the event of no opposition or after an opposition that is filed has been disposed of by the court that the tableau is homologated by judgment of the court and this judgment, as above pointed out, settles once and for all the matters that are therein disposed of and they can never again be inquired into. Woodward, Wight & Co., Ltd., v. National Box Co., Inc. (168 La. 701, 123 So. 296); In re Phoenix Building & Homestead Association, supra (203 La. 565, 14 So.2d 447)."

It was mainly on that authority that the trial judge sustained the exceptions in the present case.

But, counsel for opponent contend that the issue here is different for the reason that in this case we are dealing with interest that is provided for and fixed by contract between the parties whereas in the Canal Bank case, the Court was dealing with legal interest. They urge that the interest is not only provided for by the terms of the certificates of deposit themselves and thus became an integral part of the contract or agreement under which the Bank agreed to pay the certificates but beyond that, the Cashier of the Bank, acting in his capacity as such and as its agent, acknowledged by letter written to Mr. Hart that the certificates would bear interest as stipulated. They do not stress the point, however, that this added very much to the contract created by the certificates themselves.

Whilst it is true that there is that difference in the kind of interest that is claimed in the two cases, the fact remains that there is no difference with respect to the issue that is here presented and it is immaterial in view of the holding in the Canal Bank case. What operates as an insurmountable barrier to the opponent's claim is the waiver or release of interest as established by the terms of article 2925 of the Revised Civil Code, which reads as follows: "The release of the principal, without any reserve as to interest, raises the presumption that it also has been paid, and operates a release of it". That presumption, the Court held in the Canal Bank case, is "A legal or conclusive presumption of law which under the provisions of Article 2287 of the Revised Civil Code dispenses with all other proof in favor of the person for whom it exists."

In connection with Article 2925 of the Civil Code, counsel for opponent, whilst conceding that its terms operate as a release of interest, still maintain that the release is not effective in this case because there was the reservation also provided for by its terms which negated the release. However, counsel point to no specific reservation. To the contrary, the agreed stipulation of facts signed by them and in which it is shown that the principal due on all the certificates of deposit had been paid in full, no where indicates any reservation as to the interest now claimed.

Counsel argue further that the reservation provided for in Article 2925 of the Civil Code is intended to apply only to legal interest, or interest ex mora, and does not apply to interest which a party has bound himself to pay by contract. But this contention also is answered in the Canal Bank case wherein the case of Grennon v. New Orleans Public Service, Inc., 17 La.App. 700, 136 So. 309, is cited and referred to with approval, and in which it is presuasively shown that the distinction sought to be made, even though existing in the common law jurisdictions, does not exist in this State in view of the express provisions of Article 2925 of the Civil Code.

The lower Court correctly sustained the exceptions and dismissed the opposition and the judgment appealed from is accordingly affirmed at the costs of the opponent, appellant herein.