SAMUEL, Judge.
This is a suit on an insurance, policy. Plaintiff seeks to recover the replacement value of a bulldozer blade 'and the cost of repairing certain damage to the radiator core of a D-7 Caterpillar tractor. Defendant answered admitting the policy, denying: the allegations relative to liability and' averring, in the alternative, that' the loss o£ the blade and the radiatbr damage were-caused by the infidelity of E. T. McArthur' who had been entrusted with the tractor' and bláde by plaintiff, a coverage excluded', by the policy. Defendant also filed a third-party demand against' McArthur alternatively seeking a judgment against him im the amount of any judgment rendered! against defendant- in favor of plaintiff-’
McArthur’s answer to the- third-party petition denies liability and, in addition, specially pleads the compromise of a prior suit in the 19th Judicial District Court between plaintiff and himself by which compromise plaintiff released; and discharged McArthur from all claims relative to the tractor and blade, thus also releasing Mc-Arthur from such claims by the defendant, plaintiff’s subrogee. By supplemental answer defendant pleaded the compromise as a further defense to plaintiff’s claim, averring that by granting a release to McAr-thur plaintiff had violated the subrogation, provisions of the policy.
There was judgment in the trial court m favor of plaintiff and against the defendant for $1,900.00 ($1,500.00, representing replacement value of the blade, plus- $400.00 for repairs to the radiator), less the policy deductible of $100.00, with legal interest and costs. The judgment also, dismissed *204 defendant’s third-party demand against McArthur. Defendant has appealed.
Defendant'makes the following contentions : (1) Plaintiff has failed to prove that the loss of which he complains comes under any of the policy’s insured perils; (2) Plaintiff’s loss was caused by E. T. Mc-Arthur and was therefore a loss specifically excluded from coverage under the terms of the policy; (3) Plaintiff forfeited his rights under the policy when he breached its subrogation provisions by giving Mc-Arthur a complete release of all claims involving the tractor and blade; and (4) Alternatively, plaintiff has failed to prove either the value of the blade or the cost of repairing the radiator. Defendant further contends that, should all of these defenses fail, it is entitled to a third-party judgment against McArthur.
The record reveals that plaintiff was the owner of a certain D-7 Caterpillar tractor insured by the defendant under a contractors’ equipment floater policy. The tractor was equipped with a bulldozer blade which was approximately 10 feet in width, 3 or 314 feet in height, and weighed about 4,000 pounds. Plaintiff sent the machine to E. T. McArthur, d/b/a/ Louisiana Crawler 'Company, in Baton Rouge for repairs. It remained on McArthur’s yard for more than two years as the result of a dispute between plaintiff and McArthur arising out 'of various business dealings. Each claimed the other was indebted to him. McArthur refused to return the tractor to the plaintiff and the latter finally filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge and obtained a writ of sequestration under which the machine was seized by the sheriff of that parish.
McArthur was served with notice of the sequestration on July 14, 1961. At that time the machine was mired in the mud and weeds'of McArthur’s yard and it was not removed by the deputy sheriff making the seizure. The deputy did not appoint a custodian but he did return the same afternoon to make the removal. He was unable to do so because the yard was surrounded by a 7 foot wire fence, the gate was locked and McArthur could not be located. The following day, or perhaps one or two days thereafter (the record is not clear on this point), the tractor was moved and stored on property used by the sheriff’s office for keeping heavy seized equipment.
There is considerable conflict in the testimony of the witnesses relative to whether or not the blade was attached to the tractor on July 14 when the notice of sequestration was served. However, the trial court found as a fact that the blade was so attached at that time. We are unable to say that the trial court erred in making that finding and accordingly accept the same. The blade was not attached to the tractor at the time the machine was moved to the sheriff’s lot. It had disappeared, has never been recovered and there is no direct evidence as to what actually happened to it.
The policy affords protection against various named perils. Only three are pertinent here. Those are the provisions which insure against loss or damage directly caused by theft, vandalism or malicious mischief. Loss by “mysterious disappearance” is not covered. Plaintiff therefore bears the burden of proving by a preponderance of the .evidence that the loss and damage were caused by one of these three covered risks. However as this court said in King Finance. Co. of La. v. Fireman’s Fund Ins. Co., La.App., 159 So.2d 708, 709: “The loss and cause of loss does not have to be proved beyond a reasonable doubt but must be proved by a preponderance of the evidence, and circumstantial evidence may be sufficient.”
It is quite clear that recovery cannot be had under either vandalism or malicious mischief. In both there must be an actual purpose or design, an intent, to injure, damage or destroy. Ducote v. United States Fidelity & Guaranty Co., 241 La. 677, 130 So.2d 649. Here there is no evidence that any such intent, purpose or *205 design was involved in the loss of the blade or the damage to the radiator. A recovery by the plaintiff can only be had under the policy provision relative to theft. That insured peril includes an intent to permanently deprive the owner of the blade. Ducote v. United States Fidelity & Guaranty Co., supra.
We are of the opinion that the facts proved by the plaintiff, as found by the trial court are sufficient to establish that the loss of the blade was occasioned by theft. Considering all of the circumstances no other conclusion is tenable. The size and weight of the blade negative any possibility of misplacement, disappearance or simple loss in the usual sense. It had to be removed by a human agency which not only intended to remove it from the tractor and take it away but was also prepared with the equipment necessary for the accomplishment of that purpose The fact that the blade has never been found is, under the circumstances peculiar to this case, a sufficient indication that it was removed and taken away with the intention of permanently depriving the owner of the same. As the property was out of the possession of the plaintiff, and we note that his place of business was in Kenner, approximately 90 miles from Baton Rouge, to require any further proof of theft on his part would be equivalent to requiring proof impossible for him to obtain.
We disagree with that portion of the trial court judgment which awards $400.00 for repairs of the damage to the radiator .and reduce the judgment accordingly. That award was made on a finding by the court that the radiator was damaged while the blade was being removed by the thief. But the evidence doeá not warrant such a ■finding. The blade was attached to the machine with eight bolts and an operational ■cable. Its removal from the tractor was a comparatively simple process and one not likely to cause damage to the radiator. Additionally, the record contains no legal proof that the damage occurred during the life of the policy. The policy was issued on April 6, 1961, slightly more than three months before the notice of sequestration was served. The machine was in Mc-Arthur’s yard at the time of the issuance and continuously prior thereto for approximately two years. The only witnesses whose testimony contains any reference to the condition of the radiator were the plaintiff and McArthur. Plaintiff admitted he had no idea when the radiator was damaged. He testified it was not damaged when he sent the machine to McArthur’s yard and that it was damaged when he saw it in the sheriff’s lot more than two years later. He knew only that the damage took place during that interval of more than two years. McArthur never observed the damaged radiator. He testified only that his employees ran the engine “ever so often” while the machine was in his yard and that the radiator therefore must have been in “good shape” on those occasions. It is clear that McArthur had no personal knowledge of his employees’ actions relative to running the engine and his testimony on this point must be disregarded as hearsay. The employees referred to did not testify that they ran the engine. Two of them did appear as witnesses but their testimony contains no mention of the engine or the radiator.
We are of the opinion that plaintiff’s second contention, that there can be no recovery for the loss because it was occasioned by McArthur and was therefore specifically excluded from coverage under the terms of the policy, is without merit. The policy does exclude insurance against infidelity of the assured’s employees or persons to whom the insured property is entrusted. But McArthur was not plaintiff’s employee and, even not considering the service of notice of sequestration and its effect on McArthur’s actual control of the machine thereafter, we do not find that, as of the time the blade was stolen, he was a person to whom plaintiff “entrusted” the machine. While it may be true that McArthur had been entrusted with the *206 machine when it ■ was sent to him for repair, that relationship had come to an end prior to the theft. For plaintiff had not only unsuccessfully demanded the return of the machine, he had also filed a suit for sequestration of the vehicle and blade and had caused notice of the sequestration to be served on McArthur. In addition, and this alone would be conclusive in any event, the record contains no evidence of any kind that the blade was removed by McArthur or that its loss was occasioned by his infidelity.
We find no merit in plaintiff’s third contention, that plaintiff lost his right of action under the policy by breaching its subrogation provisions in giving McArthur a complete release Qf all claims involving the tractor and blade. The policy does provide that in the event of any payment thereunder defendant shall be subrogated to the assured’s rights of recovery therefor and the assured shall do nothing after loss to prejudice such rights. - The release was given after loss of the blade was known to the plaintiff. But the release has no significance insofar as subrogation here is concerned. The question of McArthur’s responsibility, especially in view of the third-party demand against him, has been fully litigated and we find no responsibility on the part of McArthur. Therefore, defendant’s rights have not been prejudiced by the compromise and release. The cases cited by the defendant is support of this contention, Moore v. Motors Insurance Corporation, 152 So.2d 404, Polk Chevrolet Co. v. Salario, La.App., 132 So.2d 115 and Travelers Fire Insurance Company v. Ackel, La.App., 29 So.2d 617, hold that the giving of an effective release to the person responsible for the loss under the policy results in loss by the assured of his right of action under the policy. As McArthur was not responsible for the loss the rule of law involved in those cases is not applicable here.
Both plaintiff and McArthur testified as to the replacement value of the blade. Plaintiff had 43 years of experience in the tractor and similar heavy equipment business and was familiar with the cost of tractors and used blades. Mc-Arthur had been in the business of repairing and rebuilding tractors and other heavy equipment for 28 years and he too was familiar with the cost of used blades. We-are of the opinion that the trial court reached a proper conclusion from the testimony of these two witnesses when he found the value of the blade was $1,500.00' and that such testimony was sufficient proof of that value.
As there is no evidence that the blade was removed by McArthur or that its loss-was occasioned by his fault, defendant is not entitled to the third-party judgment for which it prays.
■ For the reasons assigned, the’ judgment appealed from is amended only insofar as to decrease the award in favor of plaintiff, Wilmer J. Thomas, and against the defendant, The Pennsylvania Fire Insurance Company, from the sum of $1,900.00, subject to a deduction of $100.00, to the sum of $1,-500.00, subject to a deduction of $100.00. As thus amended, and in all other respects,, the judgment appealed from is affirmed; plaintiff to pay the cost of this appeal.
Amended and affirmed.